KAREN P. HEWITT
United States Attorney
PAUL S. COOK
Assistant U. S. Attorney
California Bar No. 79010
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5687
pcook@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.  07CR3209-JLS |
| | ) | |
| Plaintiff, | ) | DATE: January 11, 2008 |
| | ) | TIME: 1:30 P.m. |
| v. | ) | |
| | ) | |
| CARLOS ESTRADA-JIMENEZ, | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| | ) | OPPOSITION TO DEFENDANT'S |
| | ) | MOTIONS: |
| | ) | |
| Defendant. | ) | (1)  TO COMPEL DISCOVERY |
| | ) | (2)  TO DISMISS INDICTMENT |
| | ) | DUE TO MISINSTRUCTION |
| | ) | (3)  TO DISMISS INDICTMENT FOR |
| | ) | FAILURE TO ALLEGE ELEMENTS |
| | ) | (4)  TO STRIKE SURPLUSSAGE |
| | ) | (5)  FOR GRAND JURY TRANSCRIPTS |
| | ) | (6)  TO SUPPRESS STATEMENTS |
| | ) | (7)  FOR LEAVE TO FILE FURTHER |
| | ) | MOTIONS |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF FACTS, |
| | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES AND GOVERNMENT'S |
| | ) | MOTIONS FOR RECIPROCAL DISCOVERY |

The United States of America, by its counsel, Karen P. Hewitt,

United States Attorney, and Paul S. Cook, Assistant United States

Attorney, hereby responds to and opposes Defendants' above-captioned

Motions.  This response and opposition is based upon the files and

records of the case, together with the attached statement of facts and memorandum of points and authorities. The Government also hereby files its motion for reciprocal discovery.

**I**
**STATEMENT OF FACTS**

On Friday, August 24, 2007, at 10:30 a.m., USBP Agents responded to a radio call that two people were seen headed north in an area approximately 100 yards north of the U.S./Mexico border, 5 miles east of San Ysidro Port of Entry. Agents found the Defendant and the other person hiding amongst some parked trucks. Agents questioned the Defendant and the other alien, both of whom admitted to illegally entering the United States from Mexico without valid immigration documents. The Defendant admitted that he was a citizen and national of Mexico. He was taken into custody and processed at the Border Patrol station where he was advised of his immigration administrative rights.

A subsequent record check revealed that Defendant had a criminal history and several prior deportations/removals from the United States. At 2:32 p.m., Defendant was advised of his right of Consular Notification and declined to have the Mexican Consul notified. At 2:35 p.m., Defendant was advised that his administrative rights were no longer applicable and he was advised of his <u>Miranda</u> rights in Spanish. The Defendant indicated he understood his rights, agreed to speak to the Agents without an attorney present, and signed a waiver to that effect. In a video recorded interview Defendant again admitted that he was a citizen of Mexico who had been previously deported and had no permission to be in the United States. He also admitted that he was trying to go to Los Angeles, California.

2

07cr3209-JLS

Defendant was ordered deported from the United States on March 25, 1997. He has been removed several times from the United States, the last one being on April 19, 2001 at Calexico, California.

## II
### THE GOVERNMENT HAS AND WILL CONTINUE TO COMPLY WITH ITS DISCOVERY OBLIGATIONS

The United States is aware of its discovery obligations, and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. §3500) and Rule 16 of the Federal Rules of Criminal Procedure. and will continue to comply with all discovery rules. The United States has provided Defendants with 58 pages of discovery including: the arrest reports, the Defendant's criminal history; the report of the Defendant's statement made during a consensual, custodial interview by law enforcement officers; the Waiver form signed by Defendant; a CD of Defendant's confession; immigration documents relevant to his deportations. Regarding the specific requests made by the Defendant, the United States responds as follows:

1. Rule 404(b) Evidence

The United States will provide Defendant with notice of its intent to present evidence pursuant to Rule 404(b) no later than three weeks before trial or as otherwise ordered by the Court. The Government intends to use Defendant's prior Southern District of California 8 U.S.C. § 1326 conviction in 1988 as 404(b) evidence.

2. Evidence Seized and Preservation

The Government will preserve all evidence seized from the Defendant, who in turn may make an appointment, at a mutually convenient time, to inspect the evidence.

3

3. <u>Tangible Objects</u>

The Government will provide copies of or an opportunity to inspect all documents, including the A-File, and tangible things material to the defense, intended for use in the Government's case in chief, or seized from Defendant.

4. <u>Expert Witnesses</u>

The Government will notify Defendant of its expert witnesses, and will comply with Fed. R. Crim. P. 16(a)(1)(G).

5. <u>List and Addresses of Witnesses</u>

The Government has provided Defendant with the investigative reports relating to this crime. These reports include the names of the law enforcement personnel, eye witnesses and other people interviewed as part of the follow-up investigation. The Government will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such list is not required. <u>See</u> <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible Government witnesses. <u>See</u> <u>United States v. Hicks</u>, 103 F.3d 837, 841 (9th Cir. 1996)("A district court that orders the Government and the defendant to exchange witness lists and summaries of anticipated witness testimony in advance of trial has exceeded its authority under Rule 16 of the Federal Rules of Criminal Procedure and has committed error."); <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir.1977).

4

Federal Rule of Criminal Procedure 16 does not require the government (or the defense) to disclose the names and addresses of witnesses pretrial. Indeed, the Advisory Committee Notes reflect that the Committee rejected a proposal that would have required the parties to exchange the names and addresses of their witnesses three days before trial:

> The House version of the bill provides that each party, the government and the defendant, may discover the names and addresses of the other party's witnesses 3 days before trial. The Senate version of the bill eliminates these provisions, thereby making the names and addresses of a party's witnesses nondiscoverable. The Senate version also makes a conforming change in Rule 16(d)(1). The Conference adopts the Senate version.
>
> <u>A majority of the Conferees believe it is not in the interest of the effective administration of criminal justice to require that the government or the defendant be forced to reveal the names and addresses of its witnesses before trial.</u> Discouragement of witnesses and improper contact directed at influencing their testimony, were deemed paramount concerns in the formulation of this policy.

<u>United States v. Napue</u>, 834 F.2d 1311, 1317-19 (7th Cir. 1987) (quoting Rule 16 advisory committee notes) (emphasis added).

The Government will not provide Defendants with names and addresses of witnesses it does not intend to call.

7.    <u>Informant Information</u>

The Government is unaware of an informants in this case.

8.    <u>Grand Jury Transcripts</u>

Without further specificity as to the basis for this claim, defendant fall far short of making the required showing for disclosure of grand jury transcripts.

In seeking grand jury transcripts under Rule 6(e), defendant must show that the material they seek is "needed to avoid a possible

07cr3209-JLS

injustice in another judicial proceeding, that the need to disclose is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." <u>Douglas Oil Company v. Petrol Stops Northwest</u>, 441 U.S. 211, 222 (1979).  The showing of need for the transcripts must be made "with particularity" so that "the secrecy of the proceedings [may] be lifted discretely and limitedly." <u>Id</u>. at 221, <u>citing</u> <u>United States v. Proctor & Gamble Co.</u>, 356 U.S. 677, 683 (1958).  <u>See also</u> <u>United States v. Malquist</u>, 791 F.2d 1399, 1402 (9th Cir.), <u>cert. denied</u>, 479 U.S.954 (1986).

Defendant's justification for requesting transcripts of all grand jury testimony is entirely devoid of particularity.  Production of transcripts of testimony of any witnesses who may have appeared before the grand jury should be governed by the Jencks Act.  Accordingly, this motion should be denied.

### III
### MOTION TO DISMISS INDICTMENT

A.   THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND
     THE INDICTMENT SHOULD NOT BE DISMISSED
     1.   Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007.  The first pertains to a "wisdom of the criminal laws" instruction, and the second pertains to presentation of exculpatory evidence by the Assistant United States Attorney.[1] Although recognizing that the Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally

---

[1]   As Defendant acknowledges, this issue has been raised and rejected by most of the District Court Judges.

07cr3209-JLS

found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

To the extent that Defendant urges this Court to dismiss the Indictment by exercising its supervisory powers over grand jury procedures, this is a practice that the Supreme Court discourages, as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). [<u>Id.</u>] <u>United States v. Isgro</u>, 974 F.2d 1091 at 1094 (9th Cir. 1992) reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

(citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. "A grand jury so badly misguided is no grand jury at all under the Fifth Amendment". Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury

7

07cr3209-JLS

proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[2]

The portions of the two relevant instructions approved in Navarro-Vargas were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form

---

[2]   In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

8

1  of 'jury nullification.'"[3/]   408 F.3d at 1203 (footnote omitted).

2  "Furthermore, the grand jury has few tools for informing itself of the

3  policy or legal justification for the law;  it receives no briefs or

4  arguments from the parties.   The grand jury has little but its own

5  visceral reaction on which to judge the 'wisdom of the law.'"   Id.

6       Concerning the "United States Attorney and his Assistant United

7  States Attorneys" instruction, the court stated:

8           We also reject this final contention and hold that
        although this passage may include unnecessary language, it
9        does not violate the Constitution.  The "candor, honesty,
        and good faith" language, when read in the context of the
10       instructions as a whole, does not violate the
        constitutional relationship between the prosecutor and
11       grand jury. . . .  The instructions balance the praise for
        the government's attorney by informing the grand jurors
12       that some have criticized the grand jury as a "mere rubber
        stamp" to the prosecution and reminding them that the grand
13       jury is "independent of the United States Attorney[.]"

14  408 F.3d at 1207.   Id.   "The phrase is not vouching for the

15  prosecutor, but is closer to advising the grand jury of the

16  presumption of regularity and good faith that the branches of

17  government ordinarily afford each other."   Id.

18          2.   The Expanded "Wisdom of the Criminal Laws"
             Instruction Was Proper
19

20       Concerning whether the new grand jurors should concern themselves

21  with the wisdom of the criminal laws enacted by Congress, Judge Burns'

22  full instruction stated:

23  _____

24     [3/]   The Court acknowledged that as a matter of fact jury
    nullification does take place, and there is no way to control it.  "We
25  recognize and do not discount that some grand jurors might in fact
    vote to return a no bill because they regard the law as unwise at best
26  or even unconstitutional.   For all the reasons we have discussed,
    there is no post hoc remedy for that;  the grand jury's motives are
27  not open to examination."  408 F.3d at 1204 (emphasis in original).

28                              9                        07cr3209-JLS

1
2
3

       You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

4
5
6

       But it's not for you to judge the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that Congress makes.

7
8
9
10
11

       And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Defendant acknowledges that in line with <u>Navarro-Vargas</u>, "Judge Burns instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'" Defendant notes, however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that judgment made by Congress, then your option is not to say 'Well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe insufficient.'" Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection process in which

28

07cr3209-JLS

he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused from service as a grand juror."

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." This argument conflates two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not

11

say that.  That aspect of a grand jury's discretionary power (i.e.
disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u>
in its discussion of another instruction wherein the term "should" was
germane.[4/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is
Found").  This other instruction bestows discretion on the grand jury
not to indict.[5/]  In finding this instruction constitutional, the
court stated in words that ring true here, "It is the grand jury's
position in the constitutional scheme that gives it its independence,
not any instructions that a court might offer."  408 F.3d at 1206.

---

[4/]    That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's
> evidence as presented to you is sufficient to cause you to
> conclude that there is probable cause to believe that the
> accused is guilty of the offense charged.  To put it
> another way, you should vote to indict where the evidence
> presented to you is sufficiently strong to warrant a
> reasonable person's believing that the accused is probably
> guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[5/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's
> independence.  The language of the model charge does not
> state that the jury "must" or "shall" indict, but merely
> that it "should" indict if it finds probable cause.  As a
> matter of pure semantics, it does not "eliminate discretion
> on the part of the grand jurors," leaving room for the
> grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>,
299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect,
the grand jury has even greater powers of nonprosecution than the
executive because there is, literally, no check on a grand jury's
decision not to return an indictment.  408 F.3d at 1206.

07cr3209-JLS

The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Appendix 1 pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. <u>See</u> <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal

13

07cr3209-JLS

1    of this Indictment or any other indictment by this Court exercising
2    its supervisory powers.

3        Further, a reading of the dialogues between Judge Burns and the
4    three excused jurors reflects a measured, thoughtful, almost mutual
5    decision, that those three individuals should not serve on the grand
6    jury because of their views.  Judge Burns' reference back to those
7    three colloquies cannot be construed as pressuring the impaneled grand
8    jurors, but merely bespeaks a reminder to the grand jury of their
9    duties.

10        Finally, even if there was an error, Defendant has not
11    demonstrated he was actually prejudiced thereby, a burden he has to
12    bear. "Absent such prejudice--that is, absent 'grave' doubt that the
13    decision to indict was free from the substantial influence of [the
14    misconduct]'--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

15        3.   The Addition to the "United States Attorney
             and his Assistant United States Attorneys" Instruction
16           Did Not Violate the Constitution

17        Concerning the new grand jurors' relationship to the United
18    States Attorney and the Assistant U.S. Attorneys, Judge Burns
19    variously stated:

20        [T]here's a close association between the grand jury and
          the U.S. Attorney's Office.
21
              . . . . You'll work closely with the U.S. Attorney's
22        Office in your investigation of cases.

23        [I]n my experience here in the over 20 years in this court,
          that kind of tension does not exist on a regular basis,
24        that I can recall, between the U.S. Attorney and the grand
          juries.  They generally work together.
25
              Now, again, this emphasizes the difference between the
26        function of the grand jury and the trial jury.  You're all
          about probable cause.  If you think that there's evidence
27        out there that might cause you to say "well, I don't think

28                                    14

probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.[6/]

As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Defendant contends that by making the statement, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," the Judge was assuring the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" From this lash-up Defendant contends:

---

[6/]   Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

15

These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists.  A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

> (1) I have to consider evidence that undercuts probable cause.

> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

> (3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation-- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination:  i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented.  A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.[7]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be

---

[7]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate.  <u>See</u> <u>McClean v. Moran</u>, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three.  963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S. 314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)).  <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

said to have a binding obligation to present it."[8/] (emphasis added)). <u>See also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose '<u>substantial</u> exculpatory evidence' to a grand jury." (citing <u>Williams</u>) (emphasis added)).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[9/] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[10/] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

_____

[8/]    Note that in <u>Williams</u> the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. <u>See also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in <u>Isgro</u> used <u>Williams</u>' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

[9/]    He recalled those days when instructing the new grand jurors.

[10/]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

1
2
3
4
5
6
7
8
9

      In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

10 (Emphasis added.)<u>11/</u>  This policy was reconfirmed in USAM 9-5.001,

11 Policy Regarding Disclosure of Exculpatory and Impeachment

12 Information, Paragraph "A," "this policy does not alter or supersede

13 the policy that requires prosecutors to disclose '<u>substantial evidence</u>

14 that directly negates the guilt of a subject of the investigation' to

15 the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ."

16 (Emphasis added.)<u>12/</u>

17

_____

18    <u>11/</u>  <u>See</u>  www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision

19 in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as

20 the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing

21 before the grand jury from that source.

22    <u>12/</u>  Similarly, this new section does not bestow any procedural or substantive rights on defendants.

23

    Under this policy, the government's disclosure will exceed

24 its constitutional obligations. This expanded disclosure policy, however, does not create a general right of

25 discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

26

27 (continued...)

28 18

07cr3209-JLS

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[13/]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation

_____

[12/](...continued)
USAM 9-5.001, ¶ "E".

See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

[13/]     Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

07cr3209-JLS

or from submissions tendered by the defendant.[14/]   There is nothing

wrong  in this scenario with a grand juror inferring from this state-

of-affairs that there is no "substantial" exculpatory evidence, or

even if some exculpatory evidence were presented, the evidence

presented represents the universe of all available exculpatory

evidence.

Further, just as the instruction language regarding the United

States Attorney attacked in <u>Navarro-Vargas</u> was found to be

"unnecessary language [which] does not violate the Constitution," 408

F.3d at 1207, so too the "duty-bound" statement was unnecessary when

charging the grand jury concerning its relationship with the United

States Attorney and her Assistant U.S. Attorneys, and does not violate

the Constitution.  In <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir.

1992), the Ninth Circuit while reviewing <u>Williams</u> established that

there is nothing in the Constitution which requires a prosecutor to

give the person under investigation the right to present anything  to

the grand jury (including his or her testimony or other exculpatory

evidence), and the absence of that information does not require

dismissal of the indictment.   974 F.2d at 1096 ("<u>Williams</u> clearly

rejects the idea that there exists a right to such 'fair' or

'objective' grand jury deliberations.").  That the USAM imposes a duty

on United States Attorneys to present "substantial" exculpatory

---

[14/]    Realistically, given "that the grand jury sits not to
determine guilt or innocence, but to assess whether there is adequate
basis for bringing a criminal charge [i.e. only finding probable
cause]," <u>Williams</u>, 504 U.S. at 51 (citing <u>United States v. Calandra</u>,
414 U.S. 338, 343-44 (1974)), no competent defense attorney is going
to preview the defendant's defense story prior to trial assuming one
will be presented to a fact-finder.  Therefore, defense submissions
to the grand jury will be few and far between.

07cr3209-JLS

evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[15]/  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent,"  which was also required by Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it

---

[15]/  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

07cr3209-JLS

affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, nor any other indictment, need not be dismissed.

### IV
### THE INDICTMENT IS SUFFICIENT

Defendant argues that the Indictment is defective and must be dismissed in that it fails to allege: he knew he was in the United States; he failed to undergo inspection; and that his entry was voluntary. The Indictment sufficiently states the necessary elements of a Section 1326 "found in" offense, as those elements have been identified by the Ninth Circuit. Accordingly, Defendant's motion should be denied. The Supreme Court has noted that a charging document is generally sufficient if it sets forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. Musacchio, 968 F.2d 782, 787 (9th Cir.1991) (indictment that tracks the statute itself is generally sufficient). Therefore, alleging that the defendant is a deported alien who was found in the United States without consent is plainly sufficient.

The Ninth Circuit has rejected Defendant's argument that the Court should dismiss the indictment for failure to charge all of the necessary components of an entry, e.g., either (1) inspection and admission by an immigration officer, or (2) actual and intentional

22

evasion of inspection at the inspection point nearest to where he was apprehended. <u>Rivera-Sillas</u>, 417 F.3d at 1019-20. ("The Government need not plead and prove entry in order to charge or convict an alien with a § 1326 'found in' crime."). <u>See also</u> <u>United States v. Parga-Rosas</u>, 238 F.3d 1209, 1213 (9th Cir. 2001) ("[W]e have never suggested that the crime of "entry" must be charged in order to charge the crime of being "found in.").

The Ninth Circuit has considered and rejected Defendant's exact claim in <u>United States v. Rivera-Sillas</u>, 417 F.3d 1014, 1018 (9th Cir. 2005) (explaining that the "found in" clause of § 1326 "does not require the indictment to specifically state that the defendant alien entered the United States."). In that case, the Ninth Circuit specifically held that the Government need not allege the Defendant voluntarily entered the United States in a "found in" indictment. <u>Id.</u> at 1018-19. <u>Rivera-Sillas</u> reaffirms prior Ninth Circuit holdings on this issue. <u>United States v. Rodriquez-Rodriquez</u>, 364 F.3d 1142, 1145 (9th Cir. 2004)(citing <u>United States v. Parga-Rosas</u>, 238 F.3d 1209 (9th Cir. 2001)). In <u>Rodriquez-Rodriquez</u>, the Ninth Circuit reaffirmed that the Government need not allege a voluntary entry for a "found in" indictment under §1326. <u>Id</u>. In doing so, the Court directly rejected Defendant's claim that <u>Parga-Rosas</u> had been implicitly overruled by the Ninth Circuit's decision in <u>United States v. Buckland</u>, 289 F.3d 558 (9th Cir.2002) (en banc). <u>Rodriquez-Rodriquez</u>, 364 F.3d at 1146 ("<u>Buckland</u> in no way overrules <u>Parga-Rosas</u>.") Thus, under <u>Parga-Rosas</u>, <u>Rodriquez-Rodriquez</u>, and <u>Rivera-Sillas</u>, the indictment in this case sufficiently states the elements of the offense. Defendant also contends that the Court should dismiss

23

the indictment for failure to charge the required mens rea element that Defendant knew he was in the United States.  This argument has also been rejected by the Ninth Circuit in <u>Rivera-Sillas</u>.

A "found in" offense under 8 U.S.C. § 1326 is a general intent crime.  <u>Rivera-Sillas</u>, 417 F.3d at 1020.  An indictment that alleges that the defendant is "a deported alien subsequently found in the United States without permission suffices [to allege general intent].'" <u>Id.</u> (citations omitted).

Defendant's reliance on <u>United States v. Salazar-Gonzalez</u>, 458 F.3d (9th Cir. 2007) is misplaced, as that case dealt not with the propriety of the indictment, but with jury instructions on the issues of voluntariness and knowledge in a 1326 case.  In fact the court there cites with approval its holdings in the <u>Rivera-Sillas</u> case.

Defendant also argues that the indictment is defective in that it does not allege a deportation date or a temporal relationship to his removal.  Quite to the contrary, the Indictment alleges that the defendant "was removed from the United States subsequent to April 2, 1997."  This date is subsequent to his felony convictions and prior to his "found in" date of August 24, 2007, as charged in the Indictment.  This complies with the requirements of <u>United States v. Covian-Sandoval</u>, 462 F.3d 1090, 1096-98 (9th Cir.2006), [holding that the fact of a prior conviction need not have been submitted to the jury, but the date of a prior removal (necessary to determine whether the removal had followed the conviction in time) must be admitted by the defendant or found by a jury]. <u>See</u> <u>U.S. v. Salazar-Lopez</u>,506 F.3d 748 (9th Cir. 2007) (fact that defendant had been removed after his conviction, should have been alleged in the indictment and proved to

24

07cr3209-JLS

the jury).  Indeed, the Ninth Circuit recently held that a district court did not err by permitting the government to introduce evidence that defendant had been deported on two separate occasions where the evidence of each deportation was dissimilar, saying:  "The government was entitled to introduce evidence of both deportations to hedge the risk that the jury may reject the offered proof of one deportation, but not the other." United States v. Martinez-Rodriquez, 472 F.3d 1087 (9th Cir. 2007).

Defendant's motion to dismiss should be denied.

**V**
**DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

Defendant moves to suppress his post-arrest statement on the grounds of invalid Miranda waiver and lack of voluntariness.  The Government submits the defendant's signed Advice and Waiver of Rights form rebuts these allegations.  The Government acknowledges that the Court must make a voluntariness determination pursuant to 18 U.S.C. §3501.

Under Ninth Circuit and Southern District precedent, as well as a Southern District Local Rule, a defendant is entitled to an evidentiary hearing on a motion to suppress only when the Defendant adduces specific facts sufficient to require the granting of Defendant's motion.  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn

25

1  allegations was insufficient to require evidentiary hearing on
2  defendant's motion to suppress statements); Crim. L.R. 47.1.

3      Requiring a declaration from a defendant in no way compromises
4  defendant's constitutional rights, as declarations in support of a
5  motion to suppress cannot be used by the government at trial over a
6  defendant's objection. <u>Batiste</u>, 868 F.2d at 1092 (proper to require
7  declaration in support of Fourth Amendment motion to suppress );
8  <u>Moran-Garcia</u>, 783 F. Supp. at 1271-74 (extending <u>Batiste</u> to Fifth
9  Amendment motion to suppress). Furthermore, a defendant can not
10 reasonably claim that he has less information than the government, and
11 therefore should be excused from providing proof to support a motion.
12 <u>Batiste</u>, 868 F.2d at 1092.

13     In this case, Defendant has failed to provide a declaration
14 alleging specific and material facts. Thus, this Court would be
15 within its discretion to deny defendant's suppression motion based
16 upon the written advisal and waiver of rights form. Defendant's
17 motions to suppress his statements should be denied without a hearing.

18                              **VI**
                   **LEAVE TO FILE FURTHER MOTIONS**
19
20     The Government has no objection to this motion.

                                **VI**
21         **THE GOVERNMENT'S MOTION FOR RECIPROCAL**
                 **DISCOVERY SHOULD BE GRANTED**
22
23     The discovery provided to Defendants, at their request, includes
   documents and objects which are discoverable under Rule 16(a)(1)(E).
24 Consequently, the Government is entitled to discover from the
25 defendant any books, papers, documents, data, photographs, tangible
26 objects, buildings or places, or copies or portions of any of these
27

28                               26                          07cr3209-JLS

items that are in Defendant's possession, custody or control and which Defendant intends to use in the Defendant's case-in-chief.  <u>See</u> Rule 16(b)(1)(A), Fed. R. Crim. P..

Fed. R. Crim. P. 26.2 requires the production of prior statements of all witnesses, except Defendants'.  The new rule thus provides for the reciprocal production of Jencks statements.  The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act.  Therefore, the United States hereby requests that Defendants be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes or reports.

**VII**
**CONCLUSION**

For the above stated reasons, the Government respectfully requests that the Defendant's motions be denied, except where unopposed, and the Government's motion for reciprocal discovery be granted.

Date: January 4, 2008.

                         Respectfully submitted,

                         KAREN P. HEWITT
                         United States Attorney


                         s/Paul S. Cook
                         PAUL S. COOK
                         Assistant United States Attorney

27

1                        UNITED STATES DISTRICT COURT

2                       SOUTHERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,      )      Case No. 07cr3209-JLS
                                    )
4                       Plaintiff,  )
                                    )
5              v.                   )
                                    )      CERTIFICATE OF SERVICE
6    CARLOS ESTRADA-JIMENEZ,        )
                                    )
7                       Defendant.  )
     ───────────────────────────────)

8

9         IT IS HEREBY CERTIFIED THAT:

10

11        I, Paul S. Cook, am a citizen of the United States and am at

12   least eighteen years of age.  My business address is 880 Front Street,

13   Room 6293, San Diego, California 92101-8893.

14

15        I am not a party to the above-entitled action.  I have caused

16   service of Government's Response and Opposition to Defendant's Motions

17   on the following party by electronically filing the foregoing with the

18   Clerk of the District Court using its ECF System, which electronically

19   notifies them.

20        1.   Robert H. Rexrode, III

21             I declare under penalty of perjury that the foregoing is

22   true and correct.

23        Executed on January 4, 2008.

24

25                              s/Paul S. Cook
                                ─────────────────────────────
26                              PAUL S. COOK

27

28                              28