KAREN P. HEWITT
United States Attorney
PAUL S. COOK
Assistant U. S. Attorney
California Bar No. 79010
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5687
pcook@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No.  07CR3209-JLS |
| | ) | |
| Plaintiff, | ) | DATE: April 7, 2008 |
| | ) | TIME: 9:00 a.m. |
| v. | ) | |
| | ) | **GOVERNMENT'S TRIAL MEMORANDUM** |
| CARLOS ESTRADA-JIMINEZ, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by its counsel, Karen P. Hewitt, United States Attorney, and Paul S. Cook, Assistant United States Attorney, hereby files its trial memorandum in the above-referenced case.

//
//
//
//
//
//
//

# I
# STATEMENT OF THE CASE

**A.   Indictment**

On November 11, 2007, Defendant was indicted in a one count Indictment with being a Deported Alien Found in the United States, in violation of Title 8, U.S.C., Sections 1326 (a) and (b).

**B.   Trial Status**

A jury trial is scheduled for April 7, 2008 at 9:00 a.m. before the Honorable Janis L. Sammartino, United States District Judge.  The United States expects its case-in-chief to last approximately one day.

**C.   Defense Counsel**

Robert Rexrode, has been appointed to represent Defendant.

**D.   Defendant's Custody Status**

Defendant is in custody.

**E.   Interpreter**

It is anticipated that Defendant will require the assistance of a Spanish-speaking interpreter.

**F.   Jury Waiver**

Defendant has not filed a jury waiver.

**G.   Pretrial Motions**

The Court heard Defendant's pre-trial motions on January 11, 2007.  The Court denied Defendant's Motions: To Dismiss Due to Misinstruction of the Grand Jury; to Dismiss Due to Failure to Allege All Elements; To Strike Surplusage; to Produce Grand Jury Transcripts.  The Court granted the Government's request for fingerprint exemplars.  The Court will hear Defendant's Motion to Suppress Statement and the Voluntariness Hearing on April 7, 2008.

**H.   Stipulations**

The parties have not entered into any stipulations at this time.

**I.   Discovery**

The United States has and will continue to comply with its discovery obligations. The Defendant has not provided any reciprocal discovery to date.

**II**
**STATEMENT OF FACTS**

On Friday, August 24, 2007, at 10:30 a.m., USBP Agents responded to a radio call from a Remote Video Surveillance System Operator that two people were seen headed north from the secondary border fence in an area approximately 100 yards north of the U.S./Mexico border, five miles east of San Ysidro Port of Entry and one mile west of the Otay Mesa port of Entry. Agents on All Terrain Vehicles (ATVs) went to the area known as Druckers Lane and began to search parking lots used to store large truck trailers. Agents first found one of the individuals (not the Defendant) hiding on top of a parked trailer. The surveillance camera operator had lost sight of the Defendant as he was headed toward a fence separating an adjacent parking lot. An Agent continued to search, and eventually found the Defendant hiding in the wheel well area of another parked trailer in an adjacent parking lot. The Defendant was questioned in the field and admitted that he was a Mexican citizen. The Defendant also admitted that he illegally entered the United States from Mexico without valid immigration documents. He was taken into custody and processed at the Imperial Beach Border Patrol Station where he was initially advised of his immigration administrative rights.

A subsequent record check revealed that Defendant had a criminal history and several prior deportations/removals from the United States. At 2:32 p.m., Defendant was advised that the prior administrative rights were no longer applicable, as criminal charges were being brought against him. He was advised of his right to Consular Notification, but declined to have the Mexican Consulate notified. Defendant was advised of his <u>Miranda</u> rights in Spanish. Defendant indicated he understood his <u>Miranda</u> rights, agreed to speak to the Agents without an attorney present, and signed a waiver to that effect. In a video recorded interview, Defendant again admitted that he was a citizen of Mexico, born in Tijuana, who had been previously deported and had no permission to be in the United States. He also admitted that he was trying to go to Los Angeles, California.

Defendant had previously been removed from the United States pursuant to an Immigration Judge's order on November 4, 1996. He illegally returned to the United States on November 7, 1996, was charged and subsequently pled guilty, on April 2, 1997, to a violation of Title 8 U.S.C. § 1326. Defendant was again ordered deported from the United States by an Immigration Judge on March 25, 1997, and was removed, pursuant to that Order, on April 7, 1998, after he served his sentence for the 1996 § 1326 conviction. He has illegally re-entered this country and been removed two more times since 1998. He was removed from the United States on April 19, 2001, at Calexico, California, and again on July 13, 2007, after being apprehended on July 8, 2007, in the same Drucker's Lane area where he was found in the present case.

Defendant has two convictions in 1987 for Auto Theft. He was convicted in 1988 for Burglary and in 1989 for Escape. As noted above he pled guilty on April 2, 1997, to Deported Alien Found in the United States.

### III
### WITNESSES

The United States may call the following witnesses, although it reserves the right to change the order of these witnesses, substitute witnesses, add, or omit one or more witnesses.

1. United States Border Patrol Agent Llamas
2. United States Border Patrol Agent Rodriguez
3. United States Border Patrol Agent Fregoso
4. United States Border Patrol Agent Zazueta
6. United States Border Patrol Agent Roman
7. DEO Michael Aguilar (7/13/07 removal)
8. DEO Aguirre (4/7/98 removal)
9. DEO Horton (4/19/01 removal)
10. David Beers - Fingerprint Expert
11. Alexis Carrol - A-File Custodian

### IV
### EXHIBITS

The United States will provide a complete exhibit list prior to trial and has allowed defense counsel to examine the exhibits before trial. The United States also requests time to examine the defense exhibits before trial. The United States intends to offer into evidence the following:

1. Photos of the arrest location
2. Immigration Documents pertaining to Defendant

**V**
**JURY INSTRUCTIONS**

The United States will file its proposed jury instructions under separate cover.

**VI**
**LEGAL ISSUES**

A.  **Elements of the Charged Offense**

The Government must prove each of the following elements beyond a reasonable doubt:

1. Defendant was deported from the United States;
2. After deportation, the defendant voluntarily entered the United States;
3. After the defendant entered the United States he knew that he was in the United States and knowingly remained;
4. Defendant was found in United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and
4. Defendant was an alien at the time of his entry into the United States.

See 9th Cir. Model Crim. Jury Instructions 9.5B (2007); see United States v. Salazar-Gonzalez, 458 F.3d 851, 856 (9th Cir. 2006).

**B.  ALIENAGE**

The Ninth Circuit has held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001). The Ninth Circuit also has described the type of documents that may be used as evidence of alienage:

> Although neither a deportation order, see <u>United States v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing <u>United States v. Ortiz-Lopez</u>, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see <u>United States v. Hernandez</u>, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. <u>Cf.</u> <u>United States v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); <u>United States v. Contreras</u>, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

<u>United States v. Ramirez-Cortez</u>, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has also affirmed the admission of Orders to Show Cause, see <u>Sotelo</u>, 109 F.3d at 1449, admissions made during deportation hearings, see <u>id.</u>, and transcripts, see <u>Contreras</u>, 63 F.3d at 858. In <u>Sotelo</u>, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's §1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the

7

>  warrant of deportation, evidencing Sotelo's actual deportation.

Sotelo, 109 F.3d at 1449 (emphasis added).

### C. PHYSICAL REMOVAL

The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003) (holding that §1326 speaks only of "removal" and that the statute "plainly turns on the alien's physical removal -- not the order of removal").  Thus, the Government need only prove beyond a reasonable doubt that Defendant physically left the country sometime between the time he was ordered deported and the time he was found in the United States.  See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (citation omitted).  Here, the contemporaneous entry into the Department of Homeland Security's Central Index System ("CIS") and Defendant's own admissions will be used to prove he physically left the United States before he was found in this country again.

### D. EXPRESS CONSENT

The Ninth Circuit has stated what is required for permission to reapply:

>  The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. §212.2. These regulations include the requirement that a deported alien must have remained outside of the United States for a minimum of five consecutive years. Id. §212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. [Citations omitted.] Accordingly, the Attorney General did

> not "expressly consent[ ] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. §1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003).

As in Pina-Jaime, there is no evidence in this case that Defendant has properly sought or actually obtained permission to enter the United States. As a result, any cross-examination regarding the lack of permission is irrelevant.

United States v. Rodriquez-Rodriquez, 393 F.3d 849, 856 (9th Cir. 2005), is instructive in that regard. In Rodriquez-Rodriquez, the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id. Here, as in Rodriquez, Defendant has not presented any evidence that he properly applied for reentry. As in Rodriquez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

1  **E.   LAWFULNESS OF PRIOR DEPORTATION**

2  Since physical removal is all that is required, the lawfulness
3  of a defendant's prior deportation is not an element of the offense
4  under §1326 and should not be presented to the jury.  See <u>United
5  States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996) (en
6  banc).  The Government need only prove that a deportation proceeding
7  actually occurred and that the defendant was consequently deported.
8  <u>United States v. Medina</u>, 236 F.3d 1028, 1031 (9th Cir. 2001).

9  **F.   ADMISSIBILITY OF IMMIGRATION DOCUMENTS**

10  The Government intends to offer documents from the "A-File"
11  maintained by the Department of Homeland Security and its predecessors
12  that correspond to the defendant's name in order to establish the
13  defendant's alienage, prior deportations, and that he was subsequently
14  found in the United States without having sought or obtained
15  authorization from the Attorney General.  The documents are
16  self-authenticating "public records," or, alternatively, "business
17  records."   See Fed. R. Evid. 803(8)(B) and 803(6).

18  The Ninth Circuit has held that A-file documents are admissible
19  under the public records exception to the hearsay rule.  See e.g.,
20  <u>United States v. Hernandez-Herrera</u>, 273 F.3d 1213, 1217-18 (9th Cir.
21  2001) ("We have held that deportation documents are admissible to
22  prove alienage under the public records exception to the hearsay
23  rule."); <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315, 1317 (9th
24  Cir. 1997) ("This court has held that warrants for deportation are
25  generally admissible under Federal Rule of Evidence 803(8) and are not
26  subject to the law enforcement exception to that rule.").  In both the
27  <u>Hernandez-Herrera</u> and <u>Loyola-Dominguez</u> cases, the defendant appealed

28                                    10

his § 1326 conviction, arguing that the district court erred in admitting A-file documents such as the warrant of deportation and the Immigration Judge order. The Ninth Circuit upheld the admissibility of these documents as public records.

The Ninth Circuit has also explained that no foundation is required for the admissibility of A-file documents. As public records, such documents are presumed at law to be trustworthy. The court explained in <u>Loyola-Dominguez</u>:

> the public records exception is one of the few hearsay exceptions that does not require a foundation. Instead, documents that fall under the public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence.'". . . . Because the case law clearly establishes that warrants of deportation are public records within the meaning of Rule 803(8), it was Loyola-Dominguez's obligation to demonstrate that the evidence was untrustworthy; he failed to do so.

<u>Loyola-Dominguez</u>, 125 F.3d at 1318.

At trial, the Government will ask a Border Patrol agent to provide some context for the A-file documents and their role in the deportation process. The agent will testify to the purpose of the A-File and about some of the documents contained within the A-File. The agent will also testify to results of database searches that she personally conducted to determine whether the defendant applied for or obtained authorization from the Attorney General of the United States to enter into the United States. The agent's testimony will be helpful to the jury, because the testimony will give the jury some context against which to appreciate the significance of the A-file documents.

The Order of the Immigration Judge is a public records and therefore not excluded by the hearsay rule. See Fed. R. Evid. 803(8); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001); United States v. Loyola Dominguez, 125 F. 3d 1315, 1317-18 (9th Cir. 1997). It is also self-authenticating under Fed. R. Evid. 902(4). Similarly, the Certificate of Non-Existence of Record ("CNR"), which will be used to establish Defendant had not applied for or received permission to re-enter the United States, is admissible as a self-authenticating, public record. See United States v. Cervantes-Flores, 421 F.3d 825, 831-34 (9th Cir. 2005).

### G. EXPERT TESTIMONY

The Government intends to call a fingerprint expert as a witness for the purpose of identifying the defendant as the person who was previously arrested and deported. Such expert testimony should be admitted to assist the jury in understanding that this defendant is an alien who was found in the United States after having been deported. See Federal Rule of Evidence 702; United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).

District Courts routinely admit expert testimony regarding fingerprint identification. See United States v. Sherwood, 98 F.3d 402, 408 (9th Cir. 1996) (allowing admission of expert testimony on fingerprint identification); United States v. Sullivan, 246 F. Supp. 2d 700, 704 (E.D. Ky. 2003) (expert testimony regarding fingerprint identification was found "sufficiently reliable under Daubert"); United States v. Llera Plaza, 188 F. Supp. 2d 549, 576 (E.D. Pa. 2002)

(fingerprint expert could give expert opinion consistent with the <u>Daubert</u> decision and federal procedural rules).

The Government has provided written notice of its intention to use expert testimony. This notice also included a written summary of testimony the United States intends to use pursuant to Federal Rules of Evidence 702, 703, and 705, during the trial in the above-referenced criminal matter.

### H. The Court Should Admit Evidence Of Defendant's Prior Illegal Entries Pursuant To Fed. R. Evid. 404(b)

The Government intends to introduce defendant's prior arrests on November 7, 1996 and July 8, 2007 for illegal entry as "other act" evidence under Fed. R. Evid. 404(b) to establish intent, knowledge, and absence of mistake.

Evidence of other crimes, wrongs, or acts is not admissible under Fed. R. Evid. 404(b) to prove the character of the defendant in order to show action in conformity therewith. However, evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) so long as its introduction is for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). Rule 404(b) is "an inclusionary rule" under which evidence is inadmissable "only when it proves nothing but the defendant's criminal propensities." <u>United States v. Diggs</u>, 649 F.2d 731, 737 (9th Cir.), <u>cert denied</u>, 454 U.S. 970 (1981), <u>overruled on other grounds</u>, <u>United States v. McConney</u>, 728 F.2d 1195 (9th Cir.) (<u>en banc</u>), <u>cert. denied</u>, 469 U.S. 824 (1984). Evidence of other acts is admissible under Rule 404(b) if:

  A. the evidence tends to prove a material element of the offense charged:

  B. the prior act is not too remote in time;

  C. the evidence is sufficient to support a finding that the defendant committed the other act; and

  D. (where knowledge and intent are at issue) the act is similar to the offense charged.

United States v. Plancarte-Alvarez, 366 F.3d 1058, 1062 (9th Cir. 2004) (citing United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir. 1994)); United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir. 1993) (evaluating admissibility under Rule 404(b) for materiality, similarity, sufficiency, and temporal proximity).

  Here, Defendant's prior arrests for illegal entry satisfies these four elements. First, the convictions are material to Defendant's intent and conscious desire to enter the United States. United States v. Longoria, 624 F.2d 66,69 (9th Cir. 1980) (Court did not err in admitting into evidence defendant's conviction for transporting illegal aliens two years prior because it was "highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose"). The Ninth Circuit has also upheld the admission of other act evidence to prove absence or mistake or refute an "innocent dupe" defense. See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325-26 (9th Cir. 1992) (evidence that defendant had been previously observed at a residence used for harboring illegal aliens admissible to show knowledge or reckless disregard in trial for

1  transporting illegal aliens); United States v. Bibo-Rodriguez, 922
2  F.2d 1398, 1400 (9th Cir. 1991).  Second, the other act – especially
3  in the case of the July 8, 2007 arrest which occurred only one and a
4  half months before the charged crime -- is not too remote in time.
5  There is no bright-line rule requiring the Court to exclude other act
6  evidence after a certain period of time has elapsed.  See United
7  States v. Brown, 880 F.2d 1012, 1015 n. 3 (9th Cir. 1989).

8       Third, the Government will present sufficient evidence of
9  Defendant's prior arrest for illegal entry. Other act evidence under
10 Rule 404(b) should be admitted if "there is sufficient evidence to
11 support a finding by the jury that the defendant committed the similar
12 act."  Huddleston v. United States, 485 U.S. 681, 685 (1988).  The
13 testimony of a single witness satisfies the low-threshold test of
14 sufficient evidence for purposes of Rule 404(b).  See United States
15 v. Dhingra, 371 F.3d 557, 566-57 (9th Cir. 2004)(citing United States
16 v. Hinton, 31 F.3d 817, 823 (9th Cir. 1994)).  Here, the Government
17 will satisfy this low-threshold test of sufficient evidence through
18 the testimony of the arresting U.S. Border Patrol agent.

19      Fourth, Defendant's prior arrest for illegal entry is similar to
20 the crime charged in this case.  In fact, in July, 2007, Defendant was
21 found in the United States at almost the same location he was arrested
22 in the instant case.

23      Finally, any prejudice could be minimized by a limiting
24 instruction to the jury instructing them to consider the other acts
25 as it relates to Defendant's knowledge, intent, absence of mistake,

and for no other purpose.  See United States v. Montgomery, 150 F.3d 983, 1001 (9th Cir. 1998) (an appropriate limiting instruction is a factor weighing in favor of admission of Rule 404(b) evidence).

Date: April 3, 2008.

                                    Respectfully submitted,

                                    KAREN P. HEWITT
                                    United States Attorney

                                    PAUL S. COOK
                                    Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07cr3209-JLS |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| CARLOS ESTRADA-JIMINEZ, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Paul S. Cook, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of Government's Response and Opposition to Defendant's Motions on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. ROBERT REXRODE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3, 2008.

s/Paul S. Cook
PAUL S. COOK